UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAEJER DEONTE PARKER,

    Petitioner,                                  Case No. 05-CV-71106

                                                    HONORABLE AVERN COHN

v.
PAUL H. RENICO,

    Respondent.
_____/

**OPINION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Saejer Deonte Parker, (Petitioner), is a state inmate at the Carson City Correctional Facility in Carson City, Michigan. Petitioner is serving a sentence of twenty eight to ninety months in prison for one count of felon in possession of a firearm and being a second felony habitual offender, M.C.L. §§ 750.224f; 769.10, and a consecutive two year sentence for felony-firearm, M.C.L. § 750.227b. Petitioner filed a pro se petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights, including a claim that the evidence is insufficient to support this convictions. Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims lack merit. For the reasons which follow, the petition will be granted.

**II. Procedural History**

Petitioner was originally charged with conspiracy to commit murder, assault with intent to commit murder, felon in possession of a firearm, and felony-firearm. Petitioner

1

was tried jointly before a jury in the Saginaw County Circuit Court with co-defendants Jack Tillman and Terrence Williams.  A mistrial was declared with respect to a fourth co-defendant, Elijah Tillman.  As will be further explained, the trial court granted petitioner's motion for a directed verdict of acquittal on the conspiracy and the assault charges.  The jury convicted Petitioner of the two firearms offenses.

Petitioner filed an appeal by right with the Michigan Court of Appeals, in which he presented the two issues that he raises in his petition.  A divided court affirmed petitioner's conviction.  People v. Parker, No. 245894 (Mich. Ct. App. June 29, 2004)(Hoekstra, J., dissenting).  The Michigan Supreme Court denied leave to appeal. People v. Parker, 471 Mich. 954 (2004).

Petitioner filed a petition for writ of habeas corpus, presenting the following claims:

> I. There was insufficient evidence at trial to support the jury verdict of felon in possession of a firearm and felony firearm where the only evidence that implicated petitioner regarding the offenses was that petitioner was merely present in the vehicle where the weapons were found.
>
> II. The trial court abused its discretion in failing to declare a mistrial when a juror reported she was intimidated by contact at her place of employment and reported this intimidation and contact to the other members of the jury.

### III. **Facts**

The material facts leading to Petitioner's conviction as gleaned from the record follow.

Petitioner's conviction arose from a shooting that took place in the early morning hours of May 14, 2002 in Saginaw, Michigan.  Fred Stewart was sitting in his wife's car in the driveway of their home when he heard gunshots and saw a tall man shooting at

2

him.  Although he crouched down in his car, Stewart was struck by four bullets.  One of Stewart's neighbors, Eric Harvey, also heard multiple gunshots, which caused him to duck on the floor.  When Harvey looked out the window after the shooting had stopped, he observed a man in dark clothing enter a white car on its passenger side.

Michigan State Trooper Craig Tuer was on routine patrol with his partner Kenneth Campbell, when he heard gunshots.  Trooper Tuer noticed a white vehicle driving erratically and he began chasing it.  (Tr. Vol. III at p. 90-94).[1]  The chase ended when the white car crashed into a tree and telephone pole.  The driver, Jack Tillman, opened the driver's door and attempted to flee.  He was apprehended nearby by Trooper Campbell.  Trooper Tuer observed Elijah Tillman attempting to exit the vehicle from the passenger's side front door.  Terrence Williams was trying to escape from the open rear-seat passenger window, while Petitioner appeared to be moving in the direction of the driver's side door. (Tr. Vol. III at pp. 99-102; 102-104; 112-13; 172; Tr. Vol V. at p. 19-20).

Elijah Tillman began struggling with Trooper Tuer, eventually hitting him in the face with his fist, as well as attempting to remove the trooper's gun from his holster.  Elijah Tillman continued to reach for something in the car, before being subdued by several police officers. (Tr. Vol. III. at pp. 37-49; 63, 67-68; 106-118).

Officer Chad Foerster testified that Petitioner assisted the police in getting Tillman away from the car. Petitioner also informed the officers during this struggle that he was not resisting arrest. (Tr. Vol. III at pp. 48, 71, 75).

---

[1]The trial transcripts will be cited by volume and page number in the following format:  (Tr. Vol. ___ at p. ___).

After apprehending and subduing the occupants of the car, Trooper Tuer and Campbell conducted a search and found two guns. One was a handgun on the front passenger side floor of the car where Elijah Tillman had been reaching during his struggle with police. (Tr. Vol. III. at pp. 49-51, 71). As to the location of the other gun, Trooper Tuer testified as follows:

> A: There was another pistol on the back seat of the vehicle as well.
> ...
> A: That's going to be the second revolver – or not revolver, but the firearm, pistol. This is a semi-automatic which was in there. ... I just noted it visually, the location of where it was in the vehicle. And that's consistent, you know, with my initial observation of where the weapon was at.
> ...
> Q: And do you know what side of the vehicle it would've been on, driver's side or passenger side?
> A: Both of the weapons were on the passenger side of the vehicle.
> ...
> Q: Now ... the weapon in the rear seat, would that have been the same area that Terrence Williams excited the vehicle?
> A: Yes.

(Tr. Vol. III. at pp. 124-125). Trooper Campbell similarly testified:

> A: I observed two pistols. One was on the front passenger side floorboard, the other one was on the rear passenger side seat on the seat itself.

(Tr. Vol. V. at p. 31)

Saginaw Police Detective Ronald Gwizdala likewise testified that a gun was recovered from the "back seat of the car" but did not specify the exact location of the backseat in which it was recovered. (Tr. Vol. V. at p 75).

Several hours later, police found a Luger pistol along the right side of the chase route. The pistol had dirt in the barrel and left a divot nearby, an indication that someone had thrown or discarded it. Expert testimony matched the pistol to sixteen spent casings found at the scene of the shooting. The footprints found near the casings

matched only co-defendant Williams, who rode on the passenger side of the backseat.

At the conclusion of the prosecution's case, Petitioner moved for a directed verdict on all counts. The trial court directed a verdict of acquittal on the conspiracy to commit murder and assault with intent to murder counts and denied the motion with respect to the firearm counts. The trial court explained:

> ...as to Saejar Parker, the Court finds that no reasonable trier of fact could find that Mr. Parker was guilty of conspiracy to commit the crime of assault with intent to murder.
> The – the instruction on that says that – in part, says, a finding that a defendant was merely with other people who were members of a conspiracy is not enough, by itself, to prove that a defendant was also a member. In addition, the fact that a person did an act that furthered the purpose of an alleged conspiracy is not enough, by itself, to prove that that person was a member of that conspiracy, et cetera.
> In this case, there's absolutely no evidence whatsoever that Mr. Parker participated int eh assault with intent to murder or that he agreed to conspired in that fact, not is there any evidence that he was an aider and abettor, mere presence being insufficient. Therefore, I am going to grant the motion as to Count I and I'll grant the motion as to Count II.
> Insofar as the possession of a firearm while committing a felony, if the underlying felony is a possession - a felon in possession of a felony [sic], the Court will allow that. So to make it clear. I am dismissing Counts I, II, and III, and I'm denying the motion as to Counts VII and VIII for the reason that the firearms were in plain sight. Jury could find that he had constructive, if not physical, custody of a – of a weapon, and that being a felon, the underlying felony would be that – the felon in possession. And therefore, Counts VII and VIII, I'm denying them.

(Tr. Vol. VI. at p. 153-154).

The trial court instructed the jury as follows regarding the felon in possession and felony firearm charges:

> Each of the defendants is individually charged with having possessed and/or used and/or transported and/or carried a firearm in this state after having been convicted of a felony. To prove this charge, the prosecutor mush prove each of the following elements beyond a reasonable doubt:
> First, that each of the defendants possessed and/or used and/or transported a firearm in this state.

> The defendants Jack Dempsey, Tillman, Jr., Terrence Vernell Williams, and Saejar Deonte Parker have stipulated that they have been convicted of a felony in the past that – in the past. That conviction satisfied the requirements for a prior convictions of a felony for this crime.
> The term "possess" means to exercise control or authority over something at a given time. Possession may be actual or constructive and may be joint as well as exclusive.
> The defendants are also charged with the separate crime of possessing a firearm, that they – each committed the crime of possession of a firearm by a felon. To prove this crime, the prosecutor must prove each fo the following elements beyond a reasonable doubt.
> First, that the defendant committed the crime of possession of a firearm by a felony, which has been defined for you. It is not necessary, however, that the defendant be convicted of that crime.
> Second, that at the time the defendant committed that crime, he knowingly carried or possessed a firearm. A pistol is a firearm.

(Tr. Vol. VII. at p. 180-181).

As noted above, the jury convicted Petitioner of felon in possession of a firearm and felony-firearm.

## IV. Analysis

### A. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court decision but unreasonably applies that principle to the facts of the petitioner's case. Williams v. Taylor, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

### B. The sufficiency of the evidence claim

Petitioner first contends that his convictions for felon in possession of a firearm and felony-firearm are not supported by sufficient evidence, because the prosecution failed to prove that he possessed any of the firearms that were used in the shooting incident.

1.

Two judges on the Michigan Court of Appeals rejected Petitioner's claim, explaining:

> The police found another pistol jammed in a locked position on the backseat where Williams and Parker sat, but the evidence suggested that Williams carried a Luger, used only the Luger in the shooting, and threw the Luger out his window during the chase. The evidence also showed that a driver's side door repeatedly opened during the chase, suggesting that Parker attempted to dispose of the gun or use it against his pursuers. The pursuing officer also testified that Parker initially attempted to escape through the driver's side door, but abandoned the attempt when the officer dragged Williams to the ground. [internal citation omitted]. From this evidence, a rational jury could reasonably conclude that Parker possessed the pistol at some point during the evening's events.

People v. Parker, slip op. at * 6.

Judge Hoekstra dissented, stating:

7

> From my review of the evidence, I conclude that other than mere presence, the prosecution failed to produce any evidence to show that defendant possessed, constructively or otherwise, the weapons associated with this incident. A person's mere proximity to contraband is insufficient, by itself, to prove possession.
>
> In this case, the inability of the prosecution to establish defendant Parker's involvement in the principal charges of assault with intent to murder or conspiracy to commit murder, or to show any connection to the weapons other than mere presence and the possibility of access by virtue of his presence, in my judgment causes a finding of guilt on the charge of felon in possession of a firearm to be unsustainable.

People v. Parker, (Hoekstra, J., dissenting, slip op. at * 1-2).

2.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Scott v. Mitchell, 209 F. 3d 854, 885 (6th Cir. 2000)(citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, the court must determine whether the state court's application of the Jackson standard was reasonable. Dell v. Straub, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002). On a state prisoner's habeas petition challenging the insufficiency of the evidence, a federal district court must draw all available inferences and resolve all credibility issues in favor of the jury's verdict. See Spalla v. Foltz, 615 F. Supp. 224, 227 (E.D. Mich. 1985).

3.

The elements of felon in possession of a firearm in Michigan are (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the

underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. Spears v. Bradford, 2006 WL 897251, * 3 (E.D. Mich. April 3, 2006)(citing Mich. Comp. Laws § 750.224f). The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense. See Payne v. Smith, 207 F. Supp. 2d 627, 642 (E.D. Mich. 2002)(citing People v. Avant, 235 Mich. App. 499, 505 (1999)).

Possession of a firearm under Michigan law can be actual or constructive and can be proven by circumstantial evidence. People v. Hill, 433 Mich. 464, 469 (1989). A person has constructive possession of a weapon if he or she has proximity to the weapon together with indicia of control. Id. citing People v. Davis, 101 Mich. App. 198, 202 (1980). Although a defendant can jointly possess a firearm with another, more than mere association must be established to show joint possession of contraband. Instead, there must be an additional independent factor which links the defendant to the contraband. See People v. Williams, 188 Mich. App. 54, 57 (1991). A defendant's mere presence near firearms, without more, is insufficient to prove that he or she was in possession of the firearm. See People v. Wolfe, 440 Mich. 508, 527 (1992). A defendant's mere presence in a car where a gun is found and proximity to that gun are likewise insufficient proof of constructive possession. See United States v. Newsom, 452 F. 3d 593, 609 (6th Cir. 2006).

4.

Here, there was insufficient evidence presented for a rational trier of fact to conclude beyond a reasonable doubt that petitioner was in possession of any of the

firearms used in the shooting incident, particularly the pistol found in the backseat of the car.  No witnesses observed Petitioner in possession of any of the weapons that were involved in the incident.  Petitioner's fingerprints were not recovered from any of the firearms or from the shell casings that were recovered.  The fact that the trial court directed a verdict of acquittal for petitioner on the assault and conspiracy charges removed any link between Petitioner, the weapons, and the shooting.

The Michigan Court of Appeals' conclusion is unreasonable under Jackson in light of the evidence.  Although the majority of the Michigan Court of Appeals said that Petitioner's attempt to escape supported a finding of possession of the firearms, they ignored Officer Foerster's testimony that Petitioner assisted him in subduing co-defendant Tillman when Tillman attempted to reach into the car, near where one of the firearms was located.  Petitioner also informed the officers during their struggle with Tillman that he did not wish to resist arrest.  The majority decision also speculated, without any evidentiary foundation, that because the driver's side door may have been opened during the police chase, it somehow established that Petitioner was attempting to dispose of this gun or to use it against the police.  Finally, the majority reasoned that Petitioner could have possessed the firearm discovered in the backseat because the evidence suggested that co-defendant Williams, the other occupant of the backseat, used a Lugar firearm during the shooting and threw this weapon out during the police chase.  This reasoning, however, is undercut by the majority's acknowledgment earlier in their opinion that Williams was acquitted on the assault charge, and conceded, in rejecting Williams' inconsistent verdict claim that it was likely that the prosecutor failed to persuade the entire jury beyond a reasonable doubt that Williams, rather than Elijah

Tillman, actually shot the victim.  Most importantly, the majority decision ignores the salient fact that Troopers Campbell and Tuer both testified that this weapon was found on the rear passenger side of the backseat, near where Williams had been sitting and near where he was observed exiting the vehicle, not Petitioner.  Indeed, it is undisputed that Petitioner was in the backseat on the driver's side at all times and did not run away from the arrest.

As the dissenting opinion points out, the evidence at best showed Petitioner's "mere presence and the possibility of access by virtue of his presence" to the weapons.  This is clearly insufficient under Michigan law.  Moreover, the trial court denied Petitioner's motion for a directed verdict largely on the grounds that the firearms were in "plain sight."  That a firearm may be in plain sight, however, does not establish possession under Michigan law.  The trial court's instruction on possession was rather cursory, stating only that "possession may be actual or constructive and may be joint as well as exclusive."  The trial court did not elaborate on the meaning of constructive possession for the jury.

In addition, Circuit precedent supports a finding that the Michigan Court of Appeals' application of federal law as set forth in Jackson was unreasonable.  In Fuller v. Anderson, 662 F. 2d 420, 424 (6th Cir. 1981), the Court of Appeals for the Sixth Circuit affirmed a grant of the writ of habeas corpus based on insufficiency of the evidence to support a murder conviction.  The evidence in Fuller was the petitioner was present at the residence and looked around while another person started the fires that caused the victim's death.  The Sixth Circuit, quoting from the district court's opinion, found that although it may have been reasonable to speculate from this evidence that

11

petitioner acted as a lookout, a rational jury could not find it to be proof beyond a reasonable doubt that the petitioner aided and abetted in the offense, where there was no evidence that the petitioner intended to burn the victims' home and the evidence that he knew that this other individual planned to burn it was "simply too meager" to support his conviction. Id. at 424.

In Hopson v. Foltz, 818 F. 2d 866 (Table); 1987 WL 37432, * 2 (6th Cir. May 20, 1987), the Sixth Circuit granted a writ of habeas corpus, finding that there was insufficient evidence for a jury to find beyond a reasonable doubt that the petitioner participated as an aider and abettor in the murder for which he was convicted. The testimony at most indicated that the petitioner in Hopson was present at the shooting, that he may have argued with the victim during the evening prior to the shooting, that he may have known that someone else intended to harm the victim, and that he may have taken the empty shell casings after the shooting. However, there was no proof that the petitioner "acted in pre-concert" with the shooter to commit the murder or that he said or did anything to "support, encourage, or incite the commission of the crime." Id.

In Brown v. Palmer, 441 F. 3d 347, 352 (6th Cir. 2006), the Sixth Circuit indicated that although Fuller and Hopson were pre-AEDPA [Antiterrorism and Effective Death Penalty Act] cases, "[t]heir holdings that distinguish reasonable speculation from sufficient evidence are still persuasive in establishing that the state court's application of federal constitutional law as set forth in Jackson, was objectively unreasonable." In Brown, the Sixth Circuit affirmed the district court's decision granting habeas relief on an insufficiency of the evidence claim for armed robbery and carjacking again because

the evidence showed only mere presence at the scene.

Here, while the evidence may have lead to a "reasonable speculation" that Petitioner was in possession of one of the firearms used in the incident, without stacking inferences there is insufficient evidence to prove beyond a reasonable doubt that petitioner was in possession of a firearm at the time of the incident. The "meager circumstantial evidence" is simply too innocuous to convict petitioner of these crimes, particularly since much of it is "conjecture camouflaged as evidence." Piaskowski v. Bett, 256 F. 3d 687, 693 (7th Cir. 2001). The Michigan Court of Appeals' conclusion that the evidence was sufficient to convict petitioner is contrary to, or an unreasonable application of Jackson.

In reaching this decision, the Court is mindful of the deference required by the AEDPA and has not attempted to substitute its judgment for that of the Michigan courts. Rather, the Court has carefully reviewed the Michigan Court of Appeals' decision in light of the evidence and has come to the conclusion that the state court's decision is objectively unreasonable.

Because the Court finds that the state has failed to meet its burden of proof, the appropriate remedy is to issue a writ of habeas corpus outright, rather than conditioning the grant of the writ on the state's failure to retry the petitioner. See Brown v. Palmer, 358 F. Supp. 2d 648, 656 (E.D. Mich. 2005).

### C. The tainted juror claim

Because the Court is granting habeas relief to petitioner on his first claim, it will briefly address Petitioner's second claim.

Petitioner contends that he was deprived of an impartial jury because one of the jurors in his case, Linda McKether, was approached at her place of employment by a man and asked if she could do what she could, implying that she should help the defendants gain an acquittal.

The trial court conducted a hearing on the issue. The juror indicated that the contact was probably a chance encounter, that the man who approached her was not in the courtrom, and that he did not threaten her. The juror acknowledged that she had mentioned to her fellow jurors that someone had contacted her about the case. "[T]hey asked me what was wrong with me, and I just said, I got contacted, and that was it." However, the juror admitted that she felt compromised, found it difficult to continue as a juror, and asked to be excused. The trial court excused the juror and questioned each of the remaining jurors. Although one juror admitted feeling slightly intimidated, all of the jurors, including this juror, unequivocally indicated that they could judge the case fairly on the basis of the evidence and that the incident would not influence their decision. (Tr. Vol. VII at p. 44-49). The trial court subsequently denied the defendants' motion for a mistrial, because the remaining jurors indicated that they had not been compromised in any way by this contact between this man and Juror McKether. (Id. at p. 52).

The Sixth Amendment guarantees the right to a trial by an impartial jury. Duncan v. Louisiana, 391 U.S. 145, 147-149 (1968). The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. Irvin v. Dowd, 366 U.S. 717, 722(1961). The question of whether a trial court has seated a fair and impartial jury is a factual one, involving an assessment of

14

credibility.  Gall v. Parker, 231 F. 3d 265, 308 (6th Cir. 2000)(citing Patton v. Yount, 467 U.S. 1025, 1038 (1984)).  A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence.  Gall, 231 F. 3d at 334.

Here, Petitioner was not denied a fair trial because of this third party communication with Juror McKether, because the man's comment to Juror McKether was not unequivocally a threat, Juror McKether was excused from jury service, and the remaining jurors did not express any fear or uneasiness about this contact. Petitioner is not entitled to habeas relief on his second claim.

## V. Conclusion

For the reasons stated above, Petitioner's application for writ of habeas corpus is UNCONDITIONALLY GRANTED.  Petitioner's convictions for felon in possession of a firearm and felony-firearm are ordered to be VACATED AND SET ASIDE. Respondent is ordered to release Petitioner from custody immediately.

**SO ORDERED.**

Dated:  August 30, 2006        s/Avern Cohn
                               AVERN COHN
                               UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 30, 2006, by electronic and/or ordinary mail.

                                 s/Julie Owens
                                 Case Manager, (313) 234-5160